FILED
United States Court of Appeals
Tenth Circuit

August 18, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARTAVIOUS ARNEZ GROSS,

    Defendant - Appellant.

No. 20-6175

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:20-CR-00002-HE-2)**

_____

David Autry, Oklahoma City, Oklahoma, for Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, Acting United States Attorney, and Wilson D. McGarry, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

Defendant Martavious Gross escalated what could have been an everyday episode on the highway into a drive-by shooting. The sentencing court varied upward from the Guidelines range and sentenced Defendant to the statutory maximum. He appeals, challenging the sentence's procedural and substantive

reasonableness.  But the waiver in his plea agreement prohibits procedural appeals.

Defendant tries to take a detour around his appeal waiver by suggesting we should

evaluate how the court calculated the Guidelines range as part of our substantive

analysis.  But a defendant cannot transform procedural arguments into a substantive

challenge to avoid an appeal waiver's plain language.  For this reason, exercising

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm Defendant's

sentence in part and dismiss his appeal in part.

I.

Defendant sat in the passenger seat of a car driving on an Oklahoma highway

when A.A., the eventual victim, cut the car off, allegedly almost hitting it.  The car

sped up to pull beside A.A.'s car so that Defendant could yell at and flip off A.A.

But typical road-rage signaling did not satisfy Defendant, so the car caught up to

A.A. again, and this time Defendant fired a gun at A.A.'s vehicle.  The car took off

afterward, and Defendant gave the gun to his brother to hide in the trunk.  A.A. then

followed the car to collect its description and license-plate number, along with a

description of Defendant, to report to the police.

State troopers started searching for the reported vehicle.  Once they found it,

the car led the troopers on a high-speed chase before stopping.  The troopers detained

all three passengers—the driver, Defendant, and Defendant's brother.  They found

two stolen firearms in the trunk: an AR-15 containing a forty-five-round magazine

fully loaded with .223 caliber ammunition and a .40 caliber handgun containing a

fifteen-round magazine fully loaded with .40 caliber ammunition.  Defendant admitted to owning the handgun, shooting it at A.A.'s vehicle, and telling his brother to hide the handgun in the trunk after the shooting.

Defendant pled guilty to possessing a firearm by a prohibited person.[1]  In his plea agreement, Defendant waived the right to appeal his "sentence as imposed by the Court, including . . . the manner in which the sentence is determined."  But Defendant could appeal the "substantive reasonableness" of his sentence if it exceeded the advisory Guidelines range.

This was not Defendant's first run-in with the law.  His violent behavior started at age fourteen, when he pled guilty to, among other things, assault/battery (originally charged as assault/battery with a dangerous weapon).  At age seventeen, Defendant beat up two women at the Office of Juvenile affairs because one of them served him with a minor violation.  Barely a year after that assault, another woman reported that Defendant choked and beat her.  Defendant pawned two stolen firearms at age twenty.  That same year, before pawning the stolen firearms, he stole a handgun from his ex-girlfriend, and when she tried to get it back, he bit her on the cheek.  At age twenty-one, Defendant "punched [the same ex-girlfriend] down" and a month later, on his twenty-second birthday, locked her in her bedroom after taking her cellphone.  Less than a week after that birthday, police arrested Defendant for fighting with and choking the same ex-girlfriend.  She finally procured a protective

---

[1] An earlier protective order against Defendant made him a "prohibited person."  See 18 U.S.C. § 922(g)(8); infra at 4.

order against Defendant. But that did not stop Defendant from entering her ex-husband's home and punching him in the face only a few weeks following final entry of the protective order. Defendant committed this last offense mere months before the road-rage incident. Finally, Defendant allegedly battered another inmate while awaiting sentencing for the road-rage offense. And that list does not even mention his drug and vandalism offenses.

The district court considered Defendant's criminal history when it imposed his sentence. It varied upward from the Sentencing Guidelines range of fifty-seven to seventy-one months and sentenced Defendant to the maximum prison term of 120 months. It did so because of the threat Defendant poses to the public and the seriousness of his conduct in the shooting. In providing its reasons for varying upward, the district court recognized Defendant's "significant, long-term, and continuous history of violent conduct that dates back to his teenage years." Defendant appeals, challenging the sentence's procedural and substantive reasonableness. The government invoked Defendant's appeal waiver in response to his procedural arguments.

## II.

We review de novo the enforceability of a defendant's appeal waiver in a plea agreement. United States v. Lonjose, 663 F.3d 1292, 1297 (10th Cir. 2011) (citation omitted). But we review "all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard."

Gall v. United States, 552 U.S. 38, 41 (2007).  Thus, we give "due deference" to the sentencing court's variance based on 18 U.S.C. § 3553(a)'s factors.  United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008) (citations omitted); see also Gall, 552 U.S. at 51 (noting that the sentencing court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case").  To prove the court abused its discretion, the defendant must show "the sentence exceeded the bounds of permissible choice," such that the sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable."  United States v. Garcia, 946 F.3d 1191, 1211 (10th Cir. 2020) (citations and internal quotation marks omitted).

III.

Defendant challenges three aspects of his sentence.  First, he argues the sentencing court improperly increased his base-offense level by applying two inapplicable enhancements.  He argues the stolen firearm enhancement, a two-level increase, see U.S.S.G. § 2K2.1(b)(4)(A)), does not apply because no evidence proved he stole the handgun or knew it was stolen.  He also disputes the drive-by shooting enhancement, a four-level increase, see U.S.S.G. § 2K2.1(b)(6)(B)), because it applies to felonies, but Defendant claims his conduct could qualify as misdemeanor reckless conduct with a firearm.  Second, Defendant insists a jury should have applied the enhancements only after finding they applied beyond a reasonable doubt, instead of the court finding the enhancements applied by a preponderance of the evidence.  Finally, Defendant contests the court's consideration of the § 3553(a)

factors in varying upward from the Guidelines range to the statutory maximum. Defendant's first two arguments attack his sentence's procedural reasonableness, while his last argument strikes at its substantive reasonableness.

A.

Defendant's procedural challenges immediately run into a roadblock—his appeal waiver. At oral argument, his counsel focused solely on the substantive reasonableness of the sentence. Although he claimed to "maintain" the procedural arguments, he admitted that the plea agreement's terms "appear to bar" them. What Defendant seems to concede, our caselaw confirms.

We will "enforce a defendant's appellate waiver so long as: (1) the disputed issue falls within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his appellate rights; and (3) enforcing the waiver would not result in a miscarriage of justice." Lonjose, 663 F.3d at 1297 (citing United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam)). Our review of procedural reasonableness focuses on the "manner in which" the sentencing court calculated the sentence. United States v. Sanchez-Leon, 764 F.3d 1248, 1261 (10th Cir. 2014) (citation omitted). Procedural-reasonableness arguments include whether the court incorrectly calculated the Guidelines range, failed to consider the § 3553(a) factors, or relied on clearly erroneous facts. United States v. Haggerty, 731 F.3d 1094, 1098 (10th Cir. 2013) (citation omitted). Enforcing an appeal waiver results in a miscarriage of justice when (1) the district court relied on

an impermissible factor such as race, (2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. Hahn, 359 F.3d at 1327 (citation omitted).

Defendant's first two arguments fall within the waiver's scope. As a reminder, he waived the right to appeal his "sentence as imposed by the Court, including . . . the manner in which the sentence is determined." We hold his waiver includes the challenges to his sentence's calculation. See Sanchez-Leon, 764 F.3d at 1261; see also United States v. McCrary, No. 21-6047, 2022 WL 2920054, at *4 (10th Cir. July 26, 2022). Defendant does not contest this conclusion. Nor does Defendant claim that he waived his rights involuntarily or unknowingly or that enforcing the waiver would result in a miscarriage of justice; so we will not address those factors, either. See United States v. Porter, 405 F.3d 1136, 1143 (10th Cir. 2005) (citations omitted) (only considering Hahn factors that the defendant contests). We enforce the waiver, then, and dismiss his appeal insofar as Defendant's arguments bear solely upon the procedural reasonableness of his sentence.

But Defendant urges us to consider these supposed procedural errors within his substantive-reasonableness challenge, even if he waived his right to appeal them. So we turn to that argument now.

B.

Defendant claims that if the sentencing court set his Guidelines range "higher than it should have been" based on procedural errors, then that affected the substantive reasonableness of the sentence.  He also argues that the court improperly weighed the § 3553(a) factors, sentencing him to a substantively unreasonable sentence, the statutory maximum.  We hold that the court did not abuse its discretion in sentencing Defendant above the Guidelines range because the § 3553(a) factors sufficiently support the sentence.

Start with Defendant's argument about how procedural and substantive reasonableness interact.  He relies on United States v. Barnes for such a proposition. 890 F.3d 910 (10th Cir. 2018).  In that case, we recognized that "the line between procedural and substantive reasonableness is blurred."  Id. at 917 (citing United States v. Reyes-Santiago, 804 F.3d 453, 468 n.19 (1st Cir. 2015)).  Defendant plucks this line, though, out of a broader discussion about how "the content of the district court's explanation is relevant to whether the length of the sentence is substantively reasonable."  Id.  Specifically, we found the distinction between the two types of reasonableness "a significant but not necessarily sharp one, *especially as it concerns a sentencing court's explanation* for the sentence."  Id. at 916 (emphasis added).  So to analyze the substantive reasonableness of the defendants' sentences, we considered the district court's explanation for each to determine whether the court abused its discretion in weighing the § 3553(a) factors.  Id. at 917 (citation omitted); see also

8

United States v. Friedman, 554 F.3d 1301, 1308 n.10 (10th Cir. 2009) (citation omitted) (noting that the "undeniably sparse record [from the district court's failure to explain its sentence] . . . certainly bears on the question whether [the defendant]'s sentence is substantively reasonable"). In other words, "we rely on the district court's procedurally-required explanation in order to conduct 'meaningful appellate review' of a sentence's substantive reasonableness." United States v. Cookson, 922 F.3d 1079, 1091 (10th Cir. 2019) (quoting Gall, 552 U.S. at 50) (citing United States v. Lente, 647 F.3d 1021, 1039 (10th Cir. 2011)).

But Defendant does not complain that the district court inadequately explained how it decided to sentence him to the statutory maximum. Nor could he; the district court thoroughly explained its reasons for exceeding the Guidelines range.

Arguing that the district court improperly emphasized some factors over others also blurs the line between procedural and substantive reasonableness. This seems more like Defendant's theory. But we have "clarified the difference between substantive and procedural reasonableness [in those cases]: procedural error is the 'failure to consider all the relevant factors,' whereas substantive error is when the district court 'imposes a sentence that does not fairly reflect those factors.'" Sanchez-Leon, 764 F.3d at 1268 n.15 (brackets and ellipses omitted) (quoting United States v. Lopez-Macias, 661 F.3d 485, 489 n.3 (10th Cir. 2011)).

A defendant may not make an end run around an appeal waiver by suggesting we should evaluate the way the district court calculated the Guidelines range as part of our substantive analysis. See McCrary, 2022 WL 2920054, at *5 (citation

omitted) (rejecting the defendant's attempt to combine his waived (through an appeal waiver with language practically identical to the waiver here) procedural argument with his substantive challenge, which the appeal waiver allowed). So, here, Defendant cannot ram his procedural arguments into his substantive challenge just to avoid the appeal waiver's plain language. We therefore decline to consider Defendant's procedural arguments even if they affect the substantive reasonableness of his sentence.

Defendant faces another uphill battle with substantive reasonableness. We will "address whether the length of the sentence is reasonable given all the circumstances of the case in light of the [§ 3553(a)] factors." United States v. Durham, 902 F.3d 1180, 1238 (10th Cir. 2018) (citations omitted). In conducting this analysis, we are mindful that sentencing calls "on a district court's unique familiarity with the facts and circumstances of a case," and thus we will only find an abuse of discretion when the sentence "exceed[s] the bounds of permissible choice, given the facts and the applicable law in the case at hand." United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007) (citations and internal quotation marks omitted). For that reason, "we uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." Barnes, 890 F.3d at 916; see also Gall, 552 U.S. at 51 (noting that the sentencing court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case" (quotation omitted)).

The § 3553(a) factors the court should consider in determining an appropriate sentence include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes, and provide rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) the Sentencing Commission's policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution. 18 U.S.C. § 3553(a).

Defendant first challenges the sentencing court's upward variance based on conduct that the Guidelines already considered—his four-level enhancement for illegally possessing a firearm while committing a felony. He insists that the court's consideration of this conduct after applying the enhancement amounts to double counting. But "[u]nder current precedent, district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." Barnes, 890 F.3d at 921 (citation, internal quotation marks, and brackets omitted). So the court did not abuse its discretion in considering the nature of his conduct when it decided to vary upward from the Guidelines range.

Defendant also emphasizes that his long list of previous run-ins with the law includes no "actual" felony convictions. So, he argues, the sentencing court "overstated the seriousness" of and gave too much weight to his criminal history when deciding to vary upward from the Guidelines range. Not to mention, he adds,

11

probation found no "factors that would warrant a departure from the applicable" Guidelines range.  He cites no authority for this argument.  Worse yet, Defendant ignores our precedent requiring the sentencing court to "carefully consider the facts contained in the PSR when evaluating the § 3553(a) sentencing factors."  United States v. Mateo, 471 F.3d 1162, 1167 (10th Cir. 2006) (citation omitted).

The court did exactly that.  Recall that Defendant's criminal history includes years of assaults and violent behavior toward others, the most recent assault allegedly occurring while Defendant awaited sentencing.  Based on that history, the court considered § 3553(a) factors 1, 2, 4, and 6, and then sentenced Defendant accordingly.  See Barnes, 890 F.3d at 916 ("But the court need not rely on every single factor—no algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one.").  We hold that the court did not abuse its discretion in weighing Defendant's criminal history when sentencing him above the Guidelines range.

Defendant finally complains that the sentencing court did not sufficiently account for his deprived background.  The court did mention Defendant's unfortunate upbringing at sentencing.  But it also recognized Defendant's "significant and long-term history of violent conduct going back to his early teenage years that has been, more or less, consistent" up to the shooting.  In particular, the court noted that Defendant "packed a lot of violent conduct into th[e] relatively short period" from his teenage years to now.  Although "evidence of a poor upbringing or mental health problems can play a crucial mitigating role," that evidence "is most powerful when

12

accompanied by signs of recovery." United States v. Lente, 759 F.3d 1149, 1173 (10th Cir. 2014) (citation and internal quotation marks omitted). Such recovery Defendant has not shown. Thus, "we cannot say that the district court abused its discretion in granting limited import to [Defendant]'s mitigating evidence in light of the entire record." Id. at 1174.

In the end, Defendant disagrees with the court's decision to vary upward from the Guidelines range and sentence him to the statutory maximum. But we will "not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them" anew. Smart, 518 F.3d at 808. Given Defendant's repeated run-ins with the law, we cannot say the court "exceeded the bounds of permissible choice" in its sentence. Garcia, 946 F.3d at 1211 (quotation omitted).

AFFIRMED IN PART AND DISMISSED IN PART.